**[Cite as *State v. Marx*, 2021-Ohio-984.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio
      Appellee

v.

Benjamin Marx
      Appellant

Court of Appeals No. WD-20-018

Trial Court No. 2019CR0228

**DECISION AND JUDGMENT**

Decided: March 26, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a January 22, 2020 judgment of the Wood County

Court of Common Pleas, denying appellant's Crim.R. 29 motion for acquittal, and

finding appellant guilty on one count of failure to comply with an order or signal of a

police officer, in violation of R.C. 2921.331, a felony of the third degree, and one count

of theft, in violation of R.C. 2913.02, a felony of the fifth degree. Appellant was sentenced to a 41-month total term of incarceration. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Benjamin Marx, sets forth the following two assignments of error:

> I. The court abused its discretion and erred to the prejudice of [a]ppellant by denying his Crim.R. 29 motion.

> II. The jury's verdict was against the manifest weight of the evidence [].

{¶ 3} The following undisputed facts are relevant to this appeal. On the morning of May 11, 2019, a local attorney residing in the Toledo area arrived at the Perrysburg Township Lowe's store in order to make household purchases.

{¶ 4} As he parked his vehicle in the Lowe's parking lot, he noticed the distinct sound of the Lowe's store security alarms going off. He simultaneously observed appellant hurriedly pushing a shopping cart full of tools away from the store with several store employees in rapid pursuit.

{¶ 5} At this juncture, one of the employees pursuing appellant requested that the above-described witness call 9-1-1. The employee explained to the witness that appellant had just stolen merchandise from Lowe's but store policy prohibits employees from directly calling 9-1-1 to report theft.

{¶ 6} The witness did as he was asked, promptly called 9-1-1, reported the specifics of the crime, and furnished the perpetrator's license plate number. The witness had been able to secure the license plate number given his close proximity to these events.

{¶ 7} Shortly thereafter, an on-duty officer from the Perrysburg Township Police Department received a notification call from dispatch regarding the crime that had just occurred. Dispatch provided the vehicle description and license plate number.

{¶ 8} In response to this information, the officer drove onto I-75 in a northbound direction in order to keep an eye out for the subject vehicle. While on I-75, the officer observed appellant driving in a suspicious fashion.

{¶ 9} The officer began following the suspicious vehicle. She quickly determined that the vehicle's license plate number was a match to the license plate number provided by dispatch for the perpetrator of the Lowe's theft.

{¶ 10} Given these facts and circumstances, she activated her overhead lights and attempted to pull over appellant. Appellant fled at a reckless rate of speed, exited I-75 at Miami Street, and led her and other officers on an extended, high-speed chase.

{¶ 11} During the course of the ensuing police chase, appellant drove in an exceptionally dangerous fashion, reaching speeds of 120 m.p.h. and nearly causing numerous accidents.

{¶ 12} Later during the pursuit, appellant fishtailed his vehicle in the vicinity of Owens Community College, resulting in appellant being face-to-face with the initial

3.

officer who first spotted him on I-75. Her police vehicle was now approximately five feet from appellant's now stopped vehicle.

{¶ 13} As appellant appeared to be ending his flight following his fishtail halt, the officer began to exit her vehicle. At this point, appellant gunned his engine, resumed his flight, and again reached speeds well in excess of 100 m.p.h.

{¶ 14} Given the extreme risk of harm associated with continuing this high speed pursuit in a densely travelled and populated area, the chase was called off. The license plate number of the subject vehicle was run through the Bureau of Motor Vehicle's database and was found to belong to appellant.

{¶ 15} Appellant was arrested later that day at a Sylvania Township sushi restaurant where appellant was employed as a cook. In a hasty attempt to evade responsibility by superficially altering his appearance, appellant had shaved off his facial hair in his motor vehicle after the police chase. Appellant had placed his shaved facial hair in the glove compartment of the vehicle. In addition, appellant had removed the rear license plate of his vehicle.

{¶ 16} On June 19, 2019, appellant was indicted on one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, a felony of the third degree, and one count of theft, in violation of R.C. 2913.02, a felony of the fifth degree based upon the determined value of the stolen items being $1,406.85.

4.

{¶ 17} On January 22, 2020, following a jury trial, appellant was found guilty of both offenses. On January 28, 2020, appellant was sentenced to a 41-month total term of incarceration. This appeal ensued.

{¶ 18} In the first assignment of error, appellant alleges that the trial court abused its discretion in its denial of appellant's Crim.R. 29 motion for acquittal. We do not concur.

{¶ 19} It is well-established that appellate review of a disputed denial of a Crim.R. 29 motion for acquittal is governed by the same standard as is employed in determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 20} In conjunction, resolving challenges to the sufficiency of the evidence requires consideration of whether, when the evidence is examined in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). The appellate court must assess whether the evidence, if believed, would support a conviction. *Jenks* at paragraph two of the syllabus.

{¶ 21} In principle support of the first assignment, appellant maintains that appellee failed to establish appellant's identity as the perpetrator at trial. The record of evidence firmly belies this claim.

{¶ 22} Appellant appears to rely upon his transparent effort to superficially modify his appearance by shaving in the car after his initial escape as somehow operating to

5.

negate the validity of his positive identification by multiple eyewitnesses. We are not persuaded.

{¶ 23} The above-discussed Lowe's patron, the eyewitness in the parking lot, testified at trial, "I could hear the alarm going off, the security alarm, as I was coming up to the building * * * The next thing I saw is a gentleman coming out pushing a cart, kind of -- I wouldn't say running -- but walking fast, jogging * * * [B]ehind him were two Lowe's employees telling me to call the police, he is stealing from us."

{¶ 24} At the conclusion of his testimony, this witness was asked by the prosecution, "[O]n a scale of 1 to 100, 1 being almost absolutely uncertain, 100 being 100 percent confident, how certain are you that the person sitting here today was the person who pushed out that cart stealing those items from Lowe's?"

{¶ 25} The witness definitively responded, "*I am absolutely confident of that * * * We would be at the 100 [in certainty].*" (Emphasis added).

{¶ 26} The Perrysburg Township police officer who originally observed appellant on I-75 driving the vehicle with a license plate number matching the one that had been reported to 9-1-1 by the witness, likewise furnished detailed testimony of these events.

{¶ 27} She testified, "I received a dispatch * * * reporting that somebody had just stolen items from Lowe's * * * [T]hey provided a license plate [number] Henry Sam William 9594."

{¶ 28} The officer next explained that shortly thereafter she observed a man driving suspiciously leaving the area in a northerly direction on I-75, so she began to

6.

follow the vehicle. She testified, "[The vehicle] started to speed up. And then at that point, I looked at the rear license plate, and it matched the license plate that dispatch provided, Henry Sam William 9594."

{¶ 29} The officer testified that she activated her overhead lights. Appellant fled at an extremely reckless rate of speed. She testified that appellant's speed during the chase ranged from 100 m.p.h. to 120 m.p.h.

{¶ 30} At one point, appellant's vehicle fishtailed and screeched to a halt. This enabled the officer to make direct visual contact with appellant in extremely close proximity to appellant.

{¶ 31} The officer testified, "The defendant and I -- meet face-to-face. It was like slow motion in time. I remember it took about 15 seconds * * * I looked right at him, he looked right at me, it was like we locked eyes."

{¶ 32} The officer further testified regarding appellant resuming his flight at a high rate of speed and her ultimate determination to cease the pursuit due to the significant public safety risk.

{¶ 33} The officer then testified that she subsequently viewed the bureau of motor vehicle photo of appellant, which was connected to the license plate number of the vehicle that the officer had just pursued.

{¶ 34} Based upon the officer's close, direct observation of appellant during the pursuit, the officer was asked, "How certain were you that BMV photo matched the

7.

driver that you came face-to-face with midway through that pursuit?" The officer conclusively replied, "*100 percent. That's why I issued the warrant.*" (Emphasis added).

{¶ 35} The record reflects that appellant's assertion in support of the first assignment of error, that appellee failed to successfully establish the identity of appellant as the culpable party, is without merit.

{¶ 36} Multiple, credible eyewitnesses definitively identified appellant as the offender. We find appellant's first assignment of error not well-taken.

{¶ 37} In the second assignment of error, appellant alleges that his convictions were against the manifest weight of the evidence. We do not concur.

{¶ 38} It is well-established that when reviewing a manifest weight of the evidence challenge on appeal, this court must review the record of evidence, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving evidentiary conflicts, the jury clearly lost its way such that a manifest miscarriage of justice resulted. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 39} In support of the second assignment of error, appellant summarily speculates that the jury verdicts were not based upon the weight of the evidence, but were actually based upon jury concerns of, "the potentially dangerous outcome of a high-speed police chase."

8.

{¶ 40} The record contains detailed, compelling testimony provided by highly credible eyewitnesses reflecting appellant's guilt. The record contains no contrary evidence or testimony on appellant's behalf.

{¶ 41} We find that the record reflects that ample evidence, sufficient for a rational trier of fact to have found the elements of the offenses proven beyond a doubt, was presented at trial.

{¶ 42} Appellant has failed to establish that the jury clearly lost its way, causing a manifest miscarriage of justice. We find appellant's second assignment of error not well-taken.

{¶ 43} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Wood County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                             _____
                                                       JUDGE

Christine E. Mayle, J.

                            _____

Myron C. Duhart, J.                                                       JUDGE
CONCUR.

                            _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.